The next matter, number 24-1736, Libby Hughes v. Gretchen Gardiner et al. At this time, would counsel for the appellant please introduce himself on the record to begin. Good morning, Attorney Corey McKenna for Libby Hughes, appellant. I will reserve two minutes for rebuttal. May it please the Court. You may, and please proceed.  I would like to draw the Court's attention first to its recent decision in the Wadsworth case, which is First Circuit, docket number 23-1463. I learned of this case while preparing for oral argument. It's cited in appellant's brief, pages 20 and 21. The District Court below cited this case prior to the First Circuit's recent decision on it. And the District Court below used this case to support its ruling in favor of the school district not having actual knowledge of the sexual abuse of Libby Hughes. Ms. Hughes argued through myself in the brief that that case was inapt, as the District Court at that time had held that there was no notice or actual knowledge. There was no evidence to suggest that any school official was aware of the types of reports of actual or suspected conduct of harassment in regards to Title IX. The Court's recent decision in that case actually overturned that ruling and found actual knowledge. In Ms. Hughes' case, there is ample evidence that the school principal, which is last name Pangburn, was aware of the actual sexual abuse of the appellant Libby Hughes. Well, what source of information gave that knowledge? There was your client's conversation with her, which we've read, which is, she was questioned about her deposition. Did, as I understood it, no one ever told her that the sex abuse was going on? So for the facts of actual knowledge, they are objective. It's not a subjective test. It's not what Ms. Pangburn knew at the time. It is what, as the Court in the recent Wadsworth case decided, what a school official ought to know in regards to harassment occurring. And that is the point that we're making throughout our brief. The facts for that is... Well, ought to know sounds like a negligent standard. It is not. Then what's the difference? So, ought to know... Does she negligently fail to realize that this is going on? Yeah, and I don't want to get into a game of semantics between should of and ought to and could of. But, as you see in the brief, I go into detail of what, for example, the definition of knowledge is. You know, it is basically just knowing a set of facts, right? And we can apply different standards of knowledge to different people. Like, I'm the criminal defense attorney, for example, so we have our highest as knowing or intentional, where it's your conscious object to cause a certain result or you're certainly certain that your actions are going to cause a certain result. That's not the standard here. That's often what we see in actual knowledge cases as the circuit court's applying here. It's just this extremely high bar. We're sure the word is actual knowledge, but that's not what we actually mean. Okay, and what then in your position would create the actual knowledge? What specific facts create that actual knowledge? So, the specific facts are a teenage girl, and this is just known to pang burn, not anyone else at the time. There's a teenage girl who gets into an argument with a classmate in the hallway. The classmate in the hallway tells the teenage girl that she should go fuck her 22-year-old boyfriend. Teenage girl goes running, and again, these are just facts. I'm leaving out the facts that the principal does not know. Goes running down to the hallway to the principal's office. Well, actually, she called the guy, the abuser, first. Correct, but that is not something that pang burn knows, and that's why I'm leaving that out, because I believe that as well. No, but it bears on an assessment of what the motive was and perhaps the tone was of the child in going to the principal. Oh, absolutely. But when we're talking about the knowledge of the appropriate person, I don't think that we can look at that, because the appropriate person doesn't know, pang burn, the misuser texted her child abuser, and the child abuser told her, hey, go run to the principal's office and squash these rumors, right? And so that's not fair to count against the school official, because when we're talking about actual knowledge, we're talking about facts that are known to the appropriate person at the time. So we have the comment made in the hallway. We have the student running to the principal's office before anyone gets there. And that student says, hey, this student, ironically, which is the case of student-on-student sexual harassment when you really think about it, but this student says, hey, someone just called me out in the hallway for having a, I won't repeat it again, but having a boyfriend inappropriately. I don't have one. And the school's response is, don't worry about it. I will go and I will squash the rumors. I'll keep my ear out. That school official, pang burn, then goes to the athletic director's secretary and uses the name Benjamin Peshard, goes up to the secretary and says, hey, do you think Benjamin Peshard would ever sexually abuse one of our students? Keep in mind that that name has not been mentioned by my client yet. Nor has it been mentioned anywhere else. I'm not quite sure where that name gets dropped. But there's clearly something going on in Ms. Pangburn's mind to lead her to believe that she's already suspecting Benjamin Peshard, which, by the way, is the person that ends up getting criminally convicted for sexually abusing Libby Hughes. But nevertheless, she goes to the secretary and asks, hey, what do you think? And the secretary kind of generally vouches for Benjamin Peshard. Oh, no, he's not the type of guy that would ever screw around with a 13, 14-year-old girl. The school official's next course of action is to go speak with the male student who had called her out in the hallway. Goes up to the male student and says, hey, what's going on? Why'd you say that? The male student says, hey, I said out of frustration. We were having an argument. Does not deny it. Does not retract it. Does not say it's untrue. And then the principal goes back with all of that information and decides nothing to see here. So in your view, that's enough knowledge? I think at that point it certainly is. Okay, let me ask you a question of this. So you just went through this recitation of what you think the facts are that suggest actual knowledge. You said that Pangborn, after saying that she'll squash the rumors, she goes to the athletic director, secretary, and at that point she uses the name of the perpetrator, okay? And you said, who knows why, how did that get interjected? That's what should have come out at a deposition. So what's the evidence? What's the answer to that question? You should have the answer to that question. Why did she use that name at that point in time? That actually comes from the trial court's factual findings on summary judgment. I was not, unfortunately, the underlying trial counsel for this. Okay, if it's in the trial court's decision, fine. But where does it come from? Somebody should have made that inquiry. I 100% agree with you. I'm sure someone did. I just don't know it off the top of my head. Well, I mean – Yeah, because I think what Judge Smith is saying is in the deposition, somebody could have mentioned the name of a person, and yeah, that's exactly what I asked or something. So we don't know if it came directly from her or from a question naming that person. And, again, it's a deposition. This I drew from the court's finding. The court found that the principal asked the athletic director's secretary that name specifically. See, what I get here is what you just recited, I think, makes out a negligence case. I think the standard, if I understand it correctly, is much higher than a negligence standard. And what you're asking this court to do, and maybe it's a good idea. You're asking this court to take another look at what constitutes actual knowledge. Should it be constructive knowledge? Should it be a type of indifference standard? And I don't think this, at this point, rises to the level of actual knowledge as this court has understood it in the Doe v. Brown case and other cases. So are you asking us to basically take another look at this and say, that standard is too high for a sex abuse case involving a minor who's 13 or 14 or 15 years old? There's got to be a higher level of responsibility for a school principal. That is in the brief that the more serious the allegation, the more vulnerable the victim, the less you need to know. But I'm not asking the court to impose a negligence standard here today. And if the court looks at its recent Wadsworth's decision from just February, you'll see the words, ought to know. You will see the words, and this is consistent with Gebster. If a school has information conveyed that a substantial risk or possibility, these are this court's own words, of ongoing harassment, that is enough. This court's already ruled on that. I mean, it seems extraordinary to me that a principal would have a girl come into her office and say, this just happened, and I'm just here to say it's not true. It seems extraordinary that a school principal wouldn't say, wait a second, there's something going on here, and I need to dig a little deeper here. Something's happening. And so whether you call it negligence or not, the ought to know, I mean, what is ought to know? Like you ought to do more, you ought to, you wouldn't have found out. You ought to do more, correct. You need to investigate. You can't just say to a young girl, don't worry about it, I'm going to squash the rumors. That's inappropriate. It is not protecting children. It's antithetical to the education system. And this court has already ruled, so thankfully you don't have to go any further than what the court already did in Wadsworth about three weeks ago. And that's what we're asking for before the court today on the actual knowledge standard. And then I think certainly on the deliberate indifference, it's there as well in terms of how the school responded, you know, basically doing nothing after that. The school's constructive, and I think we might be two shifts passing in the night here, but I think when the school is saying that I'm asking for constructive knowledge, those are facts that are outside of the principal's knowledge. For example, the text message from the sexual abuser to the victim. The school doesn't know that. But more importantly, constructive knowledge that I'm not asking the court would be things like Officer Ryan Friedman, the John Doe officer, pulling over them in the middle of the night. The softball coaches hooking up. This is how they meet. The softball coach at the time says to Libby, oh, you're having some trouble with your mental health. Why don't you talk to this man called Benjamin Burchard? He's great with minors' mental health, and he turns out to be the sexual abuser. So what you're really saying is that when the child came in and said, there's this rumor and it's false, there's nothing to it, the principal assumed an obligation to go investigate it anyhow on the theory that it might be true, and she's just denying it, and that the investigation that the principal did here was somehow so inadequate that we can call it deliberate indifference. Yes, that is one way of putting it, and I think that the facts show that because when you go to ask the athletic director's secretary and use a specific name, and then you go and ask the boy who had said the inappropriate yet true comment, and he doesn't deny it, that is deliberate indifference towards sexual harassment of a young girl. Thank you.  Let's hear from our appellees. At this time, would counsel for the Brewer School Department please introduce herself on the record to begin? Yes, thank you. Amy Oldfield for the School Defendants. May it please the Court. I'm going to begin by addressing Wadsworth, the court's decision in Wadsworth, which was issued about seven weeks ago. I want to confirm that we've reviewed this and don't believe that it has any material effect on the underlying claims, nor does it bring cause for reversal of the lower course decision. In that case, this court reaffirmed that the actual notice standard applies. It did not adopt a negligence standard. It did not go against Gebser and adopt a respondent superior or constructive notice standard. Instead, what the court was saying was, when we look at what notice is, we have to look at the totality of circumstances. We can't look at, like, individual complaints or individual situations on their own. We have to look at everything that was known to the school, and based on an objective standard, should they have known that there was a substantial risk of harassment or ongoing harassment that was within their control. Taking everything together in this case, it is clear that the school had no actual knowledge of harassment. At most, what was known to the school's assistant principal was that Ms. Hughes was in gym class when another student told her to go have sex with her 22-year-old boyfriend. There was no individual identified. These were the only words, as Ms. Hughes testified in her deposition. She used the exact language that the other student has used towards her. Didn't she say that she didn't even know the person? In her deposition testimony, she's a little contradictory, so she does mention that she didn't know, quote, Ben very well, but in her statement, in her deposition testimony, and it's consistent with Ms. Pangburn's testimony, is that all that was communicated was the individual said, go F your 22-year-old boyfriend with no identification of the individual. And what about what your opposing counsel has just testified to, that there was a subsequent mention of the person's name? So there's a lot of conflating going on. So if you don't mind, I'm just going to say what was known to Ms. Pangburn at the time and walk through why the information that's been supplied by the plaintiff is not supported by the record. What was known was that the student made this comment. She went and spoke to what happened directly after the report to the principal, where Ms. Hughes vehemently denied the rumor and indicated that the reason she was so concerned about the rumor was because she had a crush on another classmate and didn't want that affecting her crush. Ms. Hughes then went and spoke to the student who made the comment. The student acknowledged that he was frustrated with Ms. Hughes and that he said the statement out of frustration. There was no confirmation. There was no identification of this alleged boyfriend. She also spoke to the PE teacher who provided no further information but did indicate that the two students, Ms. Hughes and this other student, often butted heads in gym class. Ms. Hughes was told to return to the office and to speak to Ms. Pangburn, who she had a close relationship with. She had further issues, and nothing came of it. In fact, Ms. Pangburn never heard anything else about it. That was until 2020, a year after Ms. Hughes graduated and more than four years after Mr. Pouchard was no longer affiliated with the school, when the school began investigating a different relationship between Ms. Hughes and another teacher. That was when Mr. Pouchard's name was first communicated to Ms. Pangburn. The information that the plaintiff provided to suggest that there was knowledge through another school's staff of Mr. Pouchard's involvement early on is based on the deposition testimony of Ms. Hughes, which at 181 affirms that it is not viable evidence here. During her deposition testimony, she indicated that she was contacted by a female friend and that friend stated that the athletic director's secretary's daughter had told her that this conversation had happened. So it's hearsay on hearsay on hearsay that led to this allegation that there was some communication between Ms. Pangburn and the secretary, when there never was. The only indication there was ever a conversation between the two regarding Mr. Pouchard was well after Ms. Hughes was no longer affiliated. Hearsay on hearsay on hearsay. While it may not be admissible to prove the truth of the matter, it could be considered just for actual knowledge or at least doing something. To back up, recall that this conversation was, Ms. Pangburn denied that this conversation ever occurred. There's no other evidence other than the compound hearsay put forth by Ms. Hughes during her deposition that any conversation that included Mr. Pouchard's identity ever occurred. Okay, but even if the conversation did occur based on that double-triple hearsay, you would still argue it's not enough? Absolutely, Your Honor. Absolutely. I mean, I don't think that we need to get there. Certainly, we're on the summary judgment record. We are only looking at what is undisputed in this case. They've provided no support, evidentiary support for their contention. Their citation to the order as represented by co-counsel was actually citing back to their amended complaint. So it was just a statement that was made in the pleadings. It was not part of the summary judgment record. Let me also ask you, there's no evidence of record that prior to this incident or alleged incident, Pouchard with Ms. Hughes or any other student, there had been any issues, correct? That is correct. There had been no complaints regarding Mr. Pouchard. Furthermore, it should be pointed out that when the rumor was reported to Ms. Pangburn, when this rumor started and it was addressed, Mr. Pouchard was no longer affiliated with the school. He stopped being a baseball coach the year prior. So when the report was received by the school, the school had no authority over him whatsoever. Thank you. Just a quick question or clarification if you could. I'm wondering if you, the standard also talks about a person in authority. Are you saying that Pangburn is not a person with authority over Bashford? Under the policy, she does not have a direct authority over the volunteer coach. However, we do recognize, based on the holdings and why it's worth it, she had, as someone with a duty to report harassment, could be deemed an appropriate person. In this case, she cannot because the school itself had no authority over the perpetrator. He was not affiliated with the school any longer. There was no action they could have taken. It would have been no different than if a student had accused Ms. Hughes of having sexual relations with a neighbor. I'm not sure I understand that because, I mean, he was in some role with the school at the time that things occurred, right? Not when the report was received by the school. So the central report that was received, the only report that was received, allegedly received, what plaintiff is arguing creates actual notice was the report of the rumor to Ms. Pangburn. And he was completely- He was no longer affiliated with the school at that time. But does that change the obligation that the principal has to do something about it? Under Title IX, yes. It does? You're saying that-  Because here we have to have an appropriate person with authority to take corrective action. If we have a third party unaffiliated with the school, what corrective action can be taken? Okay, so just sorry about delaying this, but just so I understand, so if we were to conclude that she could not take any action, given that situation at the time the complaint came in, then that answers, we don't even have to get to this question? I would agree with that, Your Honor, yes. Of actual knowledge and so forth? Right, so the first step is looking at whether or not we have an appropriate person for the purposes of reporting. And here our argument is no, we do not have an appropriate person because she had no ability to take corrective action with respect to the report. Okay, thanks. Thank you, Your Honor.  Thank you, counsel. At this time, would counsel for the appellees, Healy et al., please introduce himself on the record? He has a four-minute argument. Good morning. My name is John Lieberman, and I represent Patrick Healy and Healy Chiropractic. May it please the Court. Ms. Hughes has waived argument on appeal, as we noted in our brief. Patrick Healy, Healy Chiropractic, the Healy defendants, the Healy parties, they're only mentioned one time in the appellant's initial brief, and that is in the statement of the issues where it is asked whether or not the district court erred in granting summary judgment with respect to the Healy parties and with respect to the school department. There is no argument whatsoever in Ms. Hughes' initial brief. There is no explanation of how the district court erred in granting summary judgment, and according to Local Rule 27C, there is no substantial question that's been raised, and summary disposition and dismissal is appropriate. We've cited case law to the Court, First Circuit case law. One of the cases cited was the Zanino case, where it was held that issues adverted to in a perfunctory manner without some effort at a developed argument are deemed waived. We've cited case law noting that the appellant waived argument when it was suggested that the district court erred, but the brief never explained how. We've cited cases involving arguments raised for the first time in a reply brief, and the Court's holding that those are generally deemed waived, and that's because the appellee is entitled to rely on the initial brief for the scope of the issues appealed, and here the Healy parties have been deprived of that right. So again, summary disposition and dismissal is appropriate. I would like to address briefly, Your Honors, the facts on the record as it pertains to the Healy parties. July of 2014 was when Mr. Pouchard first met Ms. Hughes. The sexual abuse by Mr. Pouchard to Ms. Hughes occurred between April 2015 and May of 2017. There was no contact between the two from May of 2017 to June of 2020. As we've heard, this sexual abuse was kept secret. Ms. Hughes has gone as far as lying or misdirecting when asked about it. And Mr. Pouchard became an athletic trainer working for Healy Chiropractic in August of 2018, a full year after the sexual abuse had ended, with zero, with no knowledge of the sexual abuse. Ms. Hughes admitted on the record that she never told anybody with Healy Chiropractic about this. She admitted that she had zero evidence, no evidence that Healy Chiropractic knew about this. Ms. Hughes was unaware of any other such relationships by Mr. Pouchard, and Ms. Hughes acknowledged that she had no proof that Healy Chiropractic knew that Mr. Pouchard had a propensity to do this type of thing. So I would conclude by saying that the district court's decision granting summary judgment as to the Healy parties was sound, it was consistent with applicable law, and it was solid in light of the record as it pertains to the Healy parties. And unless there are any questions from the court, I can conclude my argument. Thank you. Thank you. Thank you, counsel. At this time, would counsel for Applee Doe please introduce himself on the record? He has a four-minute argument. Thank you. May it please the court, I'm John Wall on behalf of Officer John slash Jane Doe. We have a fairly narrow issue in this case regarding adequacy of service. As we believe the record reflects, there was no personal service on John slash Jane Doe, pursuant to either the federal or Maine rule of civil procedure four, and the plaintiff has not demonstrated otherwise on this record. Effectively, the plaintiff argues that the service was leaving the complaint with the sergeant at the police department was effective, for a couple of reasons. One, because there's an official capacity claim, they can serve an entity, even though the individual is named as a defendant. This court has rejected that argument in case in Echeverria. And also suggesting that by leaving it with somebody authorized to accept service for the department, that's adequate to meet the requirement for, and as the decision in Bell has indicated, the authorization has to be on behalf of the individual themselves. And then finally, with regard to an alternative argument that the court erred in failing to extend the time for service, the plaintiff has not demonstrated any law to suggest that the court's resolution of that issue was inappropriate, let alone abusive discretion. The court effectively held that you have an opportunity to attempt to amend the complaint once you learn the name of the individual, and that there was really no point in extending the time until you basically made that identification. So unless the court has any additional questions. Okay, thank you.  Okay, three minutes rebuttal. Please identify yourself. Attorney McKenna for Libby Hughes Appellant, and may I please record again. Moving backwards on the John Doe, who's also known as Officer Ryan Freeman of the Bureau of Police Department, that I think is a very unique issue in that there is clear evidence in the record that shows that not only did the Bureau of Police Department and the City of Brewer know who Officer John Doe was, but they knew of his identity prior to many of the filings they made, including filings to the court that said that they did not know the identity of John Doe slash Officer Ryan Freeman, which in my view is a giant problem for justice. You cannot write in legal briefs to the court that you have no idea who a John Doe officer is. Are you saying that during the course of discovery, plaintiff's counsel explored the question with the Department of who John Doe was and was given false answers? Yes. In depositions? In pleadings as well. So that would give you a claim against whoever answered those questions or the police department, but how does that establish service over the officer? Because they're saying we can't serve them because we don't know them, and they know them, and they won't give us the name. But what's their duty to be your agent of service? Well, when you're trying to work with someone and you're serving them, and the service comes back, there's many issues with this, the service comes back as an appropriate person. It's signed, you know, appropriate person on the return of service. But nevertheless, when you're being deceived and saying we have no idea, this officer might not even work here, but then this officer has also been investigated by the sheriff's department and by the Brewer to police department themselves. So did you go to the district court and point out to the district court that here under oath we got a false answer that kept me from finding out who this officer was? Yes, we also included the police report of Penobscot County Sheriff. And you did that while there was still discovery time? I believe off the top of my head discovery had closed, but it is in the brief, all the timelines of the exact dates down to the day is in the brief. But that was part of the attempt to ask for the amended complaint was now we know the identity. We gave the police report that showed the identity of the officer. But that was long after the deadline for amending parties. Why did you wait that long? Because that's when we found out. And we found out, ironically, through defendant management, Prashad's criminal counsel had passed that information. But why wasn't a request made to continue the, there were many motions to enlarge the discovery, but I got the sense that there was no motion, for example, to extend the time for filing an amended complaint. There was, but it was a confusing order that the court issued in that it said, if and when, and I'm paraphrasing off the top of my head, if and when you discover the identity of this police officer, you may then seek to amend your complaint instead of giving a deadline or some type of goalpost for when would be the last moment that you could do that, which I think created some confusion because when the plaintiff found out the identity of the officer, the court said kind of too bad, so sad, time is up. We're on the eve of dispositive motions, I think, was the court's decision on that issue. What the court, District Court says in footnote one on the addendum, it's page 37, last line of the footnote says, afterwards, says magistrate judge granted most of the relief requested by Hughes. The order did not specifically grant or deny the request to extend the deadline to October 5, 2022. Afterwards, the parties, including Hughes, repeatedly moved to amend the scheduling order, but none of the subsequent motions sought to enlarge the deadline to amend the pleading or joint parties. It's because of that confusing language I just mentioned where the original order on this issue said, if and when the plaintiff can find the identity of the officer, they can then file or ask, this is the important part, ask that the complaint be amended. And so that led to, I believe, a lot of confusion. That is fully briefed in my brief, if you're looking for it. Thank you, counsel. I had understood you to say before when you were up there that the District Court found in its opinion that the principal used Beshard's name as the person when speaking with someone else. Yes, it's in the addendum in the plaintiff's brief. It was on a motion to dismiss, I believe. The District Court opinion says the summary judgment record does not support the inference that Pangburn either knew or suspected that Pouchard was the rumored boyfriend. Yeah, it is very contradictory at points. There's two other points I was just looking at on my iPad there where it says. How would you point us to in the record that would show that that was wrong? It says the opposite for that. Perhaps both sides could send us a brief 28-J just citing where in the record we would find what has been said by either side regarding Pangburn's knowledge that it was Pouchard. Of the name Benjamin Beshard.  I just have one more question because one of the things the judge relied on was that in denying this motion to amend, among other things, that the plaintiff was able to file a separate action. Do you disagree with that? I would just be guessing and I don't want to guess because that's what I tell my witnesses not to do. Guessing at what? On the answer to your question. Okay, so you don't have any basis here today to say that the District Court was wrong when you said that there was really no prejudice here because the plaintiff can bring a separate cause of action against this officer once, now that they know who it is. If you want my guess, I would be it's too late. Okay, thank you. We're going to take a five minute recess and then we'll be back with the next three cases. All rise.